864 A.2d 409 (2005)
374 N.J. Super. 252
STATE of New Jersey, Plaintiff-Respondent,
v.
Eustaquio VASQUEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 19, 2004.
Decided January 4, 2005.
*411 Yvonne Smith Segars, Public Defender, attorney for appellant (Alan I. Smith, Designated Counsel, on the brief).
*412 Vincent P. Sarubbi, Camden County Prosecutor, attorney for respondent (Robin A. Hamett, Assistant Prosecutor, of counsel and on the brief).
Before Judges STERN, WECKER and GRAVES.
The opinion of the court was delivered by
WECKER, J.A.D.
A jury found defendant, Eustaquio Vasquez, guilty of third-degree possession of a controlled dangerous substance (heroin), N.J.S.A. 2C:35-10a(1) (count one); third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5a(1) and 2C:35-5b(3) (count two); and third-degree possession of heroin with intent to distribute within a school zone, N.J.S.A. 2C:35-7 (count three). Counts one and two were merged with count three. The trial judge granted the State's motion to impose the mandatory extended term for a repeat drug offender under N.J.S.A. 2C:43-6f and sentenced defendant to an extended term of ten years in state prison with a forty-eight month period of parole ineligibility. We affirm defendant's convictions but reduce his sentence as explained below.
Defendant presents the following arguments on appeal:
POINT I
THE PROSECUTOR'S SUMMATION WAS IMPROPER AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL (NOT RAISED BELOW)
POINT II
THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PLAIN ERROR IN INSTRUCTING THE JURY TO CONSIDER THE "QUANTITY AND PACKAGING" OF THE DRUGS RECOVERED AND BY INSTRUCTING THE JURY TO CONSIDER THE "GUILT OR INNOCENCE" OF THE DEFENDANT (NOT RAISED BELOW)
(A)
IN THE ABSENCE OF ANY EXPERT TESTIMONY OFFERED BY THE STATE, THE TRIAL COURT ERRED IN DIRECTING THE JURY TO CONSIDER THE "QUANTITY AND THE PACKAGING" OF THE DRUGS RECOVERED BY POLICE OFFICER ERTZ
(B)
THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY TO CONSIDER THE DEFENDANT'S "GUILT OR INNOCENCE"
POINT III
THE TEN (10) YEAR SENTENCE WITH FORTY-EIGHT (48) MONTHS OF PAROLE INELIGIBILITY IMPOSED IS MANIFESTLY EXCESSIVE AND IS AN ABUSE OF THE COURT'S DISCRETION
(A)
THE COURT ABUSED ITS DISCRETION IN IMPOSING AN EXTENDED TERM BASE SENTENCE OF TEN (10) YEARS ON DEFENDANT'S CONVICTION FOR POSSESSION OF HEROIN WITH THE INTENT TO DISTRIBUTE WITHIN A SCHOOL ZONE ON COUNT THREE
(B)
THE COURT ABUSED ITS DISCRETION IN IMPOSING A FORTY-EIGHT (48) MONTH PERIOD OF PAROLE INELIGIBILITY ON COUNT THREE

*413 (C)
THE JUDGMENT OF CONVICTION SHOULD BE AMENDED TO NOT REQUIRE THE DEFENDANT TO SUBMIT A DNA SAMPLE
We have carefully reviewed the record and the briefs, and although we reject defendant's contentions in Points I and II with respect to his conviction, those contentions warrant some discussion. In addition, defendant raises meritorious issues in Point III(A) and (B) that require us to reduce his sentence to the presumptive extended base term of seven years with a mandatory three-year period of parole ineligibility.

I
The evidence adduced at trial allowed the jury to find the following facts. At approximately 7:10 p.m. on July 22, 2002, Officer Miguel Ruiz of the Camden Police Department was working undercover when he observed defendant talking to an unidentified black male in front of a vacant house. Officer Ruiz saw defendant walk to the rear of the house, remove an object from a plastic bag on the ground, return to the front of the house, and hand the object to the unidentified male, who then left the area. The vacant house was within 1,000 feet of the Landing Square Elementary School.
Officer Ruiz radioed a description of defendant and the location of the plastic bag to his back-up unit. When members of the unit arrived three to five minutes later, defendant was arrested. Officer Ruiz directed Officer Daniel Ertz to seize the plastic bag and the "stash" behind the vacant house. The plastic bag contained fourteen small clear plastic bags, each of which contained a blue paper and white powder later determined by a state laboratory to be heroin. Defendant disputed that he was in possession of the narcotics. He testified that he was near the vacant building only because while riding his bicycle, he had stopped to urinate. He admitted to talking with a black male, but only because the male had asked defendant, "what happened?"

II
In Point I, defendant argues that the prosecutor's summation was improper in two ways: first, the prosecutor boosted a police officer's credibility; and second, the prosecutor misstated the law. Defendant did not object to either comment, and we therefore address this argument as plain error, that is, error "clearly capable of producing an unjust result." R. 2:10-2.
Defendant contends that the prosecutor's remarks deprived him of a fair trial by causing the jury to believe that to find defendant not guilty necessarily would imply that the police officer had lied. Defendant cites the following portion of the prosecutor's summation:
There's no mistaken ID alleged by the defendant, because he puts himself there. He is simply alleging that Officer Ruiz is lying, that Officer Ruiz did not see what he says happened. He's saying Officer Ruiz is lying. It's not a mistake. Officer Ruiz didn't say, well, I think he might have went to that bag, but maybe he went to that bag, so I'll just put him onto that bag. It's not about that. It's about Officer Ruiz came in here and blatantly lied to you. In order for you to believe the defendant's version, you have to believe that Officer Ruiz, on his own, decided to form this little conspiracy and lie about what he witnessed that day. Why would he do that? What does he have to gain by lying?
....

*414 Defense counsel, in his own opening, told you that he doesn't believe that Ruiz came in here and was going to lie. He told you that. He told you that Ruiz has a job to do. Defense counsel said that. He's not coming in here to lie to you, but he has a job to do. The state submits to you, yes, he had a job to do and he did his job. He had no reason to lie. Again, what benefit would Officer Ruiz gain from lying?
[Emphasis added.]
It is improper for a prosecutor to argue in summation that the "police had no motive to lie," State v. Goode, 278 N.J.Super. 85, 90, 650 A.2d 393 (App.Div.1994) (internal citation omitted), or to personally vouch for the credibility of a State's witness. State v. Staples, 263 N.J.Super. 602, 604-06, 623 A.2d 791 (App.Div.1993). Such statements in support of a police officer's credibility "are improper because they divert the jurors' attention away from the facts of the case before them." State v. Ramseur, 106 N.J. 123, 322, 524 A.2d 188 (1987). Nonetheless, "[p]rosecutors are permitted to respond to arguments raised by defense counsel as long as they do not stray beyond the evidence." State v. Morais, 359 N.J.Super. 123, 131, 819 A.2d 424 (App.Div.) (citing State v. Munoz, 340 N.J.Super. 204, 216, 774 A.2d 515 (App.Div.), certif. denied, sub nom. State v. Pantoja, 169 N.J. 610, 782 A.2d 427 (2001)), certif. denied, 177 N.J. 572, 832 A.2d 322 (2003).
In this case, defense counsel made several remarks implying that Officer Ruiz and other police officers might lie on the witness stand to obtain a conviction. In his closing, defense counsel said:
Officers  police officers, like us, as I indicated to you previously, are not perfect. They make mistakes. Okay? And I would submit to you that that's exactly what happened in this case. I'm not here to suggest that Patrolman Ruiz or Patrolman Ertz, who were involved in this case, came in here and deliberately lied to you. What they do, however, is they come in here and they try to convince you, because they're trying to get a conviction. They're trying to help the state get a conviction in this case. That's part of their job. That's part of their function.
Again, when they make an arrest, they want to make sure that, subsequent to that, there is a conviction.
....
[T]he police officers that came in here to testify, this is part of what they do. This is part of their job. They know how to come in here. They know how to testify. They know what to say. And more importantly, how to say it. Okay? They're very confident about the way they say things. Why? Because they want to convince you. Okay? They're trained to do that, as well.
And they're confident, because they believe that, once they have made an arrest, all they have to do, if they have to. If they have to come in to testify at trial, as soon as they take that witness stand and they testify to tell the truth, that, whatever they say, whatever comes out of their mouths, you will believe. Okay? Because they are police officers. God forbid that we should think that they would stretch the truth a little bit. Or lie. Or be mistaken. How could that happen?
I think, perhaps, and inappropriately so, it's human nature, I think, to some extent, to not want to believe that that could happen. But, if you listen to the news, whether it be TV, radio, newspapers, whatever, we know that it does happen and, unfortunately, it happens too often. And people pay a price for that. Okay? People like Mr. Vasquez.

*415 ....
What they are asking us to do, is to simply take the officer's word for it, when, even the officer himself, Officer Ruiz, says to us, I believe, or it appeared like a drug transaction. Okay? That's what they want you to do.
....
How do we know that the officer is telling you the truth?
....
Common sense tells us that, what they're going to put in those [police] reports is what is convenient for them to try to prove their case.
The weakness in defendant's argument before us is that the prosecutor's remarks were responsive to that portion of defense counsel's argument, quoted above, in which he first disclaimed that Patrolman Ruiz "would come in here and lie," but then suggested that a police officer would "know what to say" to ensure a conviction, and that we know that police officers "stretch the truth a little bit. Or lie. Or be mistaken." While the prosecutor's response was somewhat excessive, we do not see error "clearly capable of producing an unjust result." R. 2:10-2.
Defendant next argues that the prosecutor misstated the law on reasonable doubt. We review the challenged portions of a prosecutor's summation in the context of the entire summation. SeeState v. Lopez, 359 N.J.Super. 222, 238-39, 819 A.2d 486 (App.Div.), certif. granted, sub nom.State v. Garcia, 177 N.J. 576, 832 A.2d 326, and appeal dismissed, 178 N.J. 372, 840 A.2d 257 (2003). In that context, we see no misleading statement of the law of reasonable doubt. Immediately after the comments defendant cites as improper, the prosecutor defined reasonable doubt in virtually the same language the Supreme Court approved in State v. Medina, 147 N.J. 43, 61, 685 A.2d 1242 (1996). The prosecutor asked the jury: "Now, ask yourself this: am I firmly convinced?.... Because, that's what reasonable doubt comes down to, are you firmly convinced[?]" In Medina, the Court provided a model definition of reasonable doubt: "an honest and reasonable uncertainty in your minds about the guilt of the defendant.... Proof beyond a reasonable doubt is proof [ ] that leaves you firmly convinced of the defendant's guilt." Ibid. (emphasis added). The prosecutor's comments here were consistent with Medina.
Moreover, the trial judge clearly instructed the jury to rely on his instructions on the law, and not the attorneys' statements:
Members of the jury, you must accept and apply the law in the case as I give it to you in the charge. Any ideas you have as to what the law is or what it should be or any statements by the attorneys as to what the law may be, must be disregarded by you if it is in conflict with my charge at this time.

[Emphasis added.]
We see no error.

III
In Point II, defendant argues that the trial court erred in two ways in his instructions to the jury: first, by instructing that the jury could consider evidence of drug quantity and packaging in determining whether defendant possessed drugs with the intent to distribute; and second, by using the phrase "guilt or innocence." Neither argument was raised below; we therefore address these arguments as plain error. R. 2:10-2.
As previously noted, the portion of the charge alleged to be erroneous "cannot be dealt with in isolation ... [and] should be examined as a whole to determine *416 its overall effect." State v. Savage, 172 N.J. 374, 387, 799 A.2d 477 (2002) (quoting State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973)). Error during jury instructions rises to the level of plain error when there is "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Hock, 54 N.J. 526, 538, 257 A.2d 699 (1969) (internal citation omitted), cert. denied, 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).
There is no evidence of such error here. Defendant first claims that the jury was allowed to "speculate" about defendant's intent when the judge instructed the jury:
Intent is a state of mind and it's very rarely that intent may be proved by a witness who can testify that an accused said he had a certain intent when he engaged in a particular act. The intention must be gathered from a person's acts, conduct, and from all the person said and did at a particular time and place and from all of the surrounding circumstances.
Members of the jury, you may consider any evidence as to the quantity and the packaging of [the heroin], in evidence, together with all other evidence in the case to aid you in a determination of the element of intent to distribute.
The judge actually instructed the jury in accordance with the model jury charge. See Model Jury Charges (Criminal), § 2C:35-5, Possession of a Controlled Dangerous Substance with Intent to Distribute (Jan. 6, 1992). He did so without objection, after reviewing the proposed instructions with counsel in a charge conference.
Defendant incorrectly relies on State v. Odom, 116 N.J. 65, 560 A.2d 1198 (1989), to support his contention that an expert was required in this case to establish his intent to distribute. In Odom, where the defendant argued that it was error to allow the expert to testify, the Court held that the question whether a defendant possessed illegal drugs with the intent to distribute was an appropriate subject for expert testimony. Id. at 76, 560 A.2d 1198. The Court noted that the defendant did not "contest the fact that the jury will normally need the insight of an expert to explain the significance of the properties, packaging, and value of illegal drugs." Ibid. (emphasis added). Justice Handler wrote for the Court that it would be "unreasonable to assume that the average ... juror would necessarily know" what the defendant was likely to do with a certain quantity under given circumstances. Ibid. (internal citation omitted).
Odom prescribed the standard for allowing expert testimony about the relationship between circumstances such as drug packaging and the likely intent of the possessor. Id. at 78-80, 560 A.2d 1198. But Odom does not require the State to produce an expert witness in every intent-to-distribute case. Here there was evidence that the officer himself observed a likely drug transaction and also observed defendant going to and from the very location where the supply of drugs was found within minutes thereafter. No expert was required in order to allow the jury to draw the inference of defendant's intent to distribute those drugs.
Defendant also claims that the trial court erred in describing the jury's alternatives as "guilt or innocence." Specifically, defendant objects to the following portion of the jury instructions:

*417 [I]n this case there are three separate offenses charged in the indictment. They are separate and distinct offenses by separate counts. The defendant is entitled to have his guilt or innocence separately considered on each count by the evidence that's relevant and material to that particular charge, based upon the law as I will know [sic] give it to you.
[Emphasis added.]
In State v. White, 360 N.J.Super. 406, 413, 823 A.2d 804 (App.Div.2003) (concluding that a similar misuse of the term "innocence" did not rise to the level of plain error), we explained what should be obvious: finding a defendant not guilty of a criminal charge is not the same as finding the defendant innocent. Juries should always be instructed to determine whether or not the State has proved guilt beyond a reasonable doubt, and never instructed to decide whether a defendant is "guilty" or "innocent." Ibid. Nonetheless, we see no likelihood that the judge's misstatement affected the jury's verdict in this case.

IV
Defendant argues that the trial judge abused his discretion by imposing a ten-year extended term with a four-year parole disqualifier. In sentencing defendant, the judge found three aggravating factors: the risk that the defendant will commit another offense, N.J.S.A. 2C:44-1a(3); the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, N.J.S.A. 2C:44-1a(6); and the need to deter defendant and others from violating the law. N.J.S.A. 2C:44-1a(9). The court also found one mitigating factor: substantial grounds tending to excuse or justify defendant's conduct, though failing to establish a defense, N.J.S.A. 2C:44-1b(4). Those factors were virtually the only stated grounds for this defendant's sentence.
When an individual is convicted of possession of a controlled dangerous substance (CDS) with intent to distribute within 1,000 feet of school property and that individual also has been convicted previously of possession with intent to distribute, pursuant to N.J.S.A. 2C:35-5 or 2C:35-7, then "upon application of the prosecuting attorney [the individual must] be sentenced by the court to an extended term as authorized by [N.J.S.A. 2C:43-7c]." N.J.S.A. 2C:43-6f. Here, defendant was convicted in January 2000 of distribution of CDS within 1,000 feet of a school. An extended term sentence therefore was required for this crime once requested by the State, which defendant does not contest. See N.J.S.A. 2C:43-6f.[1]
An extended term for a third degree offense "shall be fixed between five and 10 years." N.J.S.A. 2C:43-7a(4). "[S]entences imposed pursuant to [N.J.S.A.] 2C:43-7a(4) shall have a presumptive term of seven years' imprisonment." N.J.S.A. 2C:44-1f (emphasis added). Further, when a defendant is sentenced to an extended term under N.J.S.A. 2C:43-6f, a period of parole ineligibility "shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater."
The sentencing judge gave these reasons for the sentence he imposed:
I find the following aggravating and mitigating factors:
I find aggravating factor three, the risk that he'll commit another offense. I find number six, the extent of his prior criminal record, the serious offenses of *418 which he has been convicted. At this time, I am not weighing that heavily on a qualitative basis, as his only prior contact has been the municipal court system. [other than his prior school zone drug conviction] I find aggravating factor nine, the need to deter this defendant and others, from violating the law.
Counselors, I am not going to impose aggravating factors two and eleven, as requested by the state. I feel that, with regard to number two, the fact that the state has moved for an extended term, has sufficiently dealt with that aggravating factor and it would be double counting. And with regard to eleven, I'm not satisfied that the state has proved sufficiently that the defendant was in the business of distributing drugs, other than the fact that he was convicted of a distribution of a controlled dangerous substance. So, I'm not going to impose eleven.
The only mitigating factor the Court does find, is mitigating factor four. And that this defendant has, apparently, been using drugs for 23 years and has failed to deal with his problem. And I find that that was a substantial ground, tending to excuse or justify his conduct, though failing to establish a defense. I find that mitigating factor.
I find there are no other mitigating factors. His conduct clearly caused or threatened serious harm. He should have contemplated that. There's nothing to show he acted under strong provocation. The victim did not induce or facilitate the commission of the offense. There's no issues of restitution or community service. He has a prior record, so seven would not apply.
I have found aggravating factor three, the risk that he'll commit another offense. For the same reasons, I cannot give him the benefit of mitigating factors eight and nine. I do not find he's likely to respond affirmatively to probation and there's nothing in the file as to eleven, twelve or thirteen.
Therefore, at this time, in weighing those aggravating and mitigating factors on a qualitative, as well as quantitative basis, the Court does find the aggravating factors would preponderate over the mitigating factor.
At this time, under State v. Dunbar, the Court may consider that conviction used to qualify him for the extended term. On January 7th of the year 2000, he has an indictable conviction for distribution of CDS within 1,000 feet of a school, used for school purposes.
At this time, now, in re-weighing and reevaluating those aggravating and mitigating factors on a qualitative, as well as quantitative basis, the Court does find that the aggravating  the Court is certain the aggravating factors substantially outweigh any mitigating factors.
....
Counsel, it will be the sentence of the Court under count three, that he be committed to the custody and commission of the Department of Corrections for an extended term of ten years [in] New Jersey State Prison, 48 months to be served without being eligible for parole.
[Emphases added.]
The judge erred in concluding that Dunbar[2] permitted him to raise the presumptive extended base term on account of defendant's only prior conviction, the very conviction which both allowed and required an extended term. To do so was a form of "double-counting." while Dunbar addresses an extended term sentence imposed on *419 a persistent offender pursuant to N.J.S.A. 2C:44-3a, The same rationale applies to an extended term sentence imposed pursuant to N.J.S.A. 2C:43-6f. Cf. State v. Miller, 108 N.J. 112, 122, 527 A.2d 1362 (1987) ("[F]actors invoked by the Legislature to establish the degree of the crime should not be double counted when calculating the length of the sentence.")
We review sentencing decisions under the standard set forth in State v. Roth, 95 N.J. 334, 365-66, 471 A.2d 370 (1984):
[A]ppellate review of a sentencing decision calls for us to determine, first, whether the correct sentencing guidelines, or in this case, presumptions, have been followed; second, whether there is substantial evidence in the record to support the findings of fact upon which the sentencing court based the application of those guidelines; and third, whether in applying those guidelines to the relevant facts the trial court clearly erred by reaching a conclusion that could not have reasonably been made upon a weighing of the relevant factors.
Under longstanding state law, the sentencing judge has discretion to adjust a sentence upward from the presumptive term after weighing aggravating and mitigating factors defined by N.J.S.A. 2C:44-1a and b. An exercise of discretion in sentencing must be "based upon findings of fact that are grounded in competent, reasonably credible evidence." Roth, supra, 95 N.J. at 363, 471 A.2d 370 (internal citation omitted). Thus in setting the length of an extended term, aggravating and mitigating factors must be balanced to determine whether or not to impose a sentence greater than the presumptive extended term and to determine the period of parole ineligibility within the permissible statutory range. State v. Kirk, 145 N.J. 159, 176, 178, 678 A.2d 233 (1996); State v. Dunbar, 108 N.J. 80, 89, 527 A.2d 1346 (1987); see also State v. Jefimowicz, 119 N.J. 152, 163-64, 574 A.2d 428 (1990) (applying Dunbar to Graves Act mandatory extended term sentencing). We are satisfied that neither the judge's findings, nor the record, support either the maximum extended term or the parole ineligibility term imposed here.
Applying the Dunbar principle, we perceive no basis in this record for an extended term longer than the presumptive seven years. Defendant's criminal history, apart from the prior school zone case, is minimal; he has two prior municipal court convictions, as the sentencing judge noted.[3] Further, the elements of this school zone case, while clearly proved, are unexceptional. Similarly, there can be no basis for imposing more than the required minimum three-year period of parole ineligibility. Dunbar, supra, 108 N.J. at 91-92, 527 A.2d 1346. We therefore vacate defendant's sentence and exercise our original jurisdiction to impose the presumptive seven year extended term for defendant's third-degree crime, with a three-year period of parole ineligibility. See R. 2:10-5.
We are constrained to note the recent Supreme Court decision in Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). There the Supreme Court applied Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to hold the Washington State sentencing scheme unconstitutional. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond reasonable doubt." Blakely, supra, ___ U.S. at ___, 124 S.Ct. at 2536, 159 L.Ed.2d at 412 (quoting Apprendi, supra, 530 U.S. at 490, 120 S.Ct. at *420 2362-63, 147 L.Ed.2d at 455). Although defendant has not raised an argument under Blakely or Apprendi, it is useful to explain briefly why neither of those decisions can affect the disposition of this case in light of our imposition of the presumptive base term.
The Court in Blakely defined the "statutory maximum" as the maximum sentence a judge could impose solely on the basis of the facts essential to and reflected in the jury's verdict, without any additional factual finding by the court other than the defendant's prior record of convictions. ___ U.S. at ___, 124 S.Ct. at 2537, 159 L.Ed.2d at 413-14.
Defendant's sentence to an extended term in this case, as a repeat drug offender pursuant to N.J.S.A. 2C:43-6f, thus fell within the Blakely exception for a prior record as an aggravating factor. Cf. State v. McMillan, 373 N.J.Super. 27, 28, 860 A.2d 484 (App.Div.2004) (holding that an extended term as a persistent offender pursuant to N.J.S.A. 2C:44-3 is within the Blakely exception and reaffirming our pre-Blakely decision in State v. Dixon, 346 N.J.Super. 126, 139-41, 787 A.2d 211 (App.Div.2001), certif. denied, 172 N.J. 181, 796 A.2d 898 (2002)). In this case, however, the judge sentenced defendant to an extended term substantially longer than the seven-year presumptive term mandated by N.J.S.A. 2C:44-1f, after finding aggravating factors that arguably go beyond defendant's criminal record.
In State v. Natale, 373 N.J.Super. 226, 861 A.2d 148 (2004), we recently held that Blakely applies to New Jersey's statutory sentencing scheme and requires that a jury make all findings respecting aggravating factors, other than the defendant's prior record, that are relied upon to impose a sentence above the presumptive term.[4]But see State v. Abdullah, 372 N.J.Super. 252, 282, 858 A.2d 19 (App.Div.2004) (holding Blakely inapplicable to New Jersey's sentencing statutes). In light of our decision on independent state grounds that there is no justification in this case for a sentence longer than the presumptive base term along with the minimum mandatory period of parole ineligibility, Blakely can have no application to this case, irrespective of the final disposition in Natale.
Defendant also argues that his judgment of conviction should be amended to eliminate the order to submit a DNA sample. A review of the oral sentencing transcript indicates that the trial court did not require defendant to submit a DNA sample. A trial court's oral opinion normally controls over an inconsistent judgment of conviction. State v. Warmbrun, 277 N.J.Super. 51, 58 n. 2, 648 A.2d 1153 (App.Div.1994) (citing State v. Pohlabel, 40 N.J.Super. 416, 423, 123 A.2d 391 (App.Div.1956)), certif. denied, 140 N.J. 277, 658 A.2d 300 (1995). The submission of a DNA sample, however, is required of all individuals convicted of a crime. N.J.S.A. 53:1-20.20g. Had the court failed to order a DNA sample, the illegal sentence would have been subject to correction at any time. We therefore affirm that portion of the judgment of conviction requiring a DNA sample, which shall be included in the amended judgment of conviction.
Defendant's conviction is affirmed. His sentence is reduced to the presumptive extended base term of seven years with a three-year period of parole ineligibility.
Remanded for entry of an amended judgment of conviction consistent with this opinion.
NOTES
[1] The mandatory imposition of an extended term pursuant to N.J.S.A. 2C:43-6b is subject to judicial review as arbitrary, pursuant to State v. Lagares, 127 N.J. 20, 601 A.2d 698 (1992).
[2] State v. Dunbar, 108 N.J. 80, 527 A.2d 1346 (1987).
[3] The judge himself said that he did not weigh defendant's record "heavily."
[4] We stayed Natale pending the State's anticipated appeal or petition for certification to the Supreme Court of New Jersey and action thereon.