**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0519-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GUALBERTO SOTO, a/k/a
GUADALBER SOTO, and
GUALBERTO SOTO, JR.,

     Defendant-Appellant.

_____

Submitted September 18, 2018 – Decided March 13, 2019

Before Judges Ostrer and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment Nos.  16-06-0397 and 16-06-0398.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen W.  Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).

Michael A.  Monahan, Acting Union County Prosecutor, attorney for respondent (Michelle J.  Ghali, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

After the trial court denied his motions for discovery and a Franks[1] hearing, defendant Gualberto Soto pleaded guilty to third-degree possession of heroin and cocaine with the intent to distribute in a school zone, N.J.S.A. 2C:35-7(a), and second-degree certain person not to possess a firearm, N.J.S.A. 2C:39-7(b)(1). Consistent with the plea agreement, the court sentenced defendant to a mandatory extended term of five years with a fifty-four month parole disqualifier on the former offense, and a concurrent five-year term with a five-year parole disqualifier on the latter.

On appeal, defendant contends the trial court erred in denying his motion to compel discovery of laboratory-test results, which were purported to show he sold cocaine to a confidential informant (CI). A Union County Prosecutor's Office detective mentioned those results in his affidavit to obtain a warrant to search defendant's residence. In executing the search, police seized the drugs and gun that led to defendant's convictions. Defendant also argues the court erred in its sentence, by double-counting his prior drug offense as a basis both for an extended term, and for finding an aggravating factor. We affirm the trial court's discovery order and the conviction, but remand for resentencing.

---

[1] Franks v. Delaware, 438 U.S. 154 (1978).

A-0519-17T2

We discern the following facts from the detective's search warrant affidavit. In December 2015, the detective received information from a previously-untested CI about an unidentified male who was actively involved in selling cocaine. The detective had extensive narcotics enforcement experience and was familiar with the ways illicit drugs were packaged and distributed in drug operations. The CI did not provide a name, but identified the address of the suspect's residence in Elizabeth, and gave a physical description of a Hispanic man about thirty years old, five-foot-eight, and 190 pounds. According to the CI, the suspect stored the cocaine in his residence and sold it at locations in Union County after receiving a telephone order. The CI agreed to help the investigation through a controlled buy.

With police supervision, the CI called the suspect to arrange a drug purchase. The suspect told the CI to meet at an agreed-upon location for the sale. Stationed police witnessed the suspect leave the Elizabeth address and then followed him to the agreed-upon location. Police then witnessed the CI engage in a hand-to-hand exchange with the suspect. Thereafter, police followed the suspect back to his address.

A-0519-17T2

The CI met with police and handed them a substance from the transaction, which police suspected was cocaine. The substance was sent to the laboratory where it tested positive for cocaine. Police had the CI under constant surveillance during the controlled buy. No other contraband or money was found on the CI before or after the transaction.

Police conducted two more controlled buys between the CI and the suspect during the weeks of January 25 and February 1, 2016. The transactions proceeded as before. The suspected cocaine from the second controlled buy tested positive, too. Test results from the third transaction were still pending when the detective applied for the warrant.

The search warrant was signed and then executed on February 4, 2016. At the Elizabeth residence, police found: cocaine and heroin; $4000 in cash; a handgun and bullets; and various items apparently used in drug transactions. Defendant was arrested on the scene. He was charged based on the seized drugs and weapon, but not the drugs from the controlled buys.

Pre-trial, defendant moved under Rule 3:13-3 to compel the State to produce the reports of the lab tests. Although defendant did not provide an affidavit, his counsel contended that his client denied selling drugs to a CI. He

argued the State would be unable to produce the lab reports, if so ordered.[2] Defendant would then challenge the warrant on the basis that the controlled buys never occurred. The State contended that disclosure of the lab reports would provide information – such as the date of the sale, the weight of the drugs, and the packaging used – that would enable defendant to identify the CI. Defense counsel said he would consent to any restrictions on the disclosure the court deemed proper.

The trial court denied the motion to compel discovery. The court observed that the information could disclose the CI's identity and defendant's motion was unsupported by an affidavit. Citing State v. Broom-Smith, 406 N.J. Super. 228 (App. Div.), aff'd, 201 N.J. 229 (2009), the court held that defendant needed to produce competent evidence to support "an order compelling the production of the laboratory tests upon the controlled purchases."

## II.

Defendant raises the following points for our consideration:

---

[2]  The record does not include a certification from the detective or anyone else that the man who participated in the controlled buys with the CI was, in fact, the defendant. The presentence report describes defendant as thirty-nine years old, five-foot-ten and 170 pounds. However, defendant did not claim that someone other than he participated in the controlled buys; that would not have undermined the probable cause to search the seller's base of operations. Rather, he argued the controlled buys did not occur at all.

POINT I

THE MOTION FOR DISCOVERY OF THE LAB REPORTS SHOULD HAVE BEEN GRANTED; ACCORDING TO THE JUDGE'S OWN FINDINGS IN HIS OPINION, THE DISCLOSURE OF THAT INFORMATION WOULD NOT HAVE REVEALED ANY CONFIDENTIAL INFORMATION. MOREOVER, THE PRINCIPAL DECISION RELIED UPON BY THE JUDGE, STATE V. BROOM-SMITH, 406 N.J. SUPER. 228 (APP. DIV. 2009), IS EASILY DISTINGUISHABLE FROM THE CASE AT HAND.

POINT II

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE; THE JUDGE DOUBLE-COUNTED THE SAME OFFENSE THAT TRIGGERED AN EXTENDED TERM TO SET THE BASE TERM OF THAT SAME EXTENDED TERM.

A.

We review the trial court's discovery ruling under the abuse of discretion standard. Broom-Smith, 406 N.J. Super. at 239.

Defendant argues that the lab reports were discoverable under Rule 3:13-3, which grants a defendant broad discovery into "relevant material." We disagree, for the simple reason that defendant was not charged with possessing or distributing the cocaine from the controlled buys. Therefore, the lab reports would not be relevant to the triable issues of fact in the case. See State v. Gilchrist, 381 N.J. Super. 138, 146 (App. Div. 2005) (noting that relevant

6

evidence must tend to "'prove or disprove any fact of consequence to the determination of the action.'") (quoting N.J.R.E. 401).

We recognize that a court has the inherent authority, in the interests of justice, to order discovery not mandated by the Rule. See State ex rel. A.B., 219 N.J. 542, 555 (2014). The burden rests on the defendant to establish the need for the discovery. State v. Kane, 449 N.J. Super. 119, 133 (App. Div. 2017). Therefore, we shall consider whether, apart from Rule 3:13-3, defendant was entitled to discover the lab reports, so he could mount a challenge to the search warrant.

Under Franks, a defendant may challenge a search warrant upon a "substantial preliminary showing" that the affiant, as distinct from the informant, engaged in a "false statement knowingly and intentionally or with reckless disregard for the truth . . . ." Franks, 438 U.S. at 155.[3] A "search warrant must be voided and the fruits of the search excluded" if "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Id. at 156; see also State v. Howery,

_____

[3] Defendant also contended he was entitled to a Franks hearing, even without the requested discovery. The trial judge denied the request, and defendant does not appeal that order.

7

80 N.J. 563, 568 (1979) (stating that the false statements "must be material to the extent that when they are excised from the affidavits, that document no longer contains facts sufficient to establish probable cause"). A reviewing court can only invalidate a search warrant if there was insufficient evidence to support the issuing judge's probable cause finding. State v. Chippero, 201 N.J. 14, 20-21 (2009).

To obtain a Franks hearing, a defendant must first allege with specificity the portions of the affidavit that are false. 438 U.S. at 171. As part of the required "substantial preliminary showing," a defendant must present "[a]ffidavits or sworn or otherwise reliable statements of witnesses" or satisfactorily explain their absence. Ibid. The Franks Court required the substantial preliminary showing "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." Id. at 170.

In Broom-Smith, we applied these principles to a discovery request that preceded a potential Franks hearing. The trial court denied the discovery request for, among other things, chain-of-custody documents related to drugs sold in controlled buys and laboratory-test results. The trial court deemed the request

"a veiled attempt to learn the identity of the confidential informant." Broom-Smith, 406 N.J. Super. at 240.[4]

Affirming the trial court's order, we rejected the defendant's contention that he needed the information "to possibly attack the validity of the warrant at a Franks hearing." Broom-Smith, 406 N.J. Super. at 240. We concluded that even if the defendant could establish that the chain of custody or the lab testing was inadequate, he could not meet the "substantial preliminary showing" that Franks requires. Ibid. We noted that, for purposes of sustaining the warrant, it was sufficient that the investigator attested to his involvement in the controlled buys, defendant sold what was purported to be cocaine, and investigators' field-tests indicated the substance was cocaine. Ibid.

Defendant asserts that his case is factually distinguishable from Broom-Smith because no field tests were conducted here. He also argues that he sought narrower discovery than the defendant sought in Broom-Smith, noting that the requested lab reports could have been redacted to shield the CI's identity. He

_____

[4] Shielding the informant's identity, and protecting the informant from retaliation, encourages the flow of information about crime. See State v. Sessoms, 413 N.J. Super. 338, 343-44 (App. Div. 2010) (discussing the purpose behind the State's privilege to keep the identity of an informant hidden); N.J.R.E. 516.

A-0519-17T2

contends that absent the lab reports, the search warrant would have been defective.

We are not persuaded. Even if the reference to the positive lab results were excised from the search-warrant affidavit, it contained sufficient evidence to support the necessary probable cause determination. While a controlled buy, alone, "would not conclusively establish probable cause," it is highly "persuasive evidence." State v. Jones, 179 N.J. 377, 392 (2004). "[E]ven one additional circumstance might suffice, in the totality of the circumstances, to demonstrate probable cause when the police successfully have performed a controlled drug buy." Ibid. (quotation marks and citation omitted). "The test is qualitative and not quantitative." Ibid.

Here, the CI described in detail the manner in which the suspect sold cocaine. This procedure was followed during the three controlled buys, corroborating the CI's initial information. Additionally, police witnessed the suspect leave the Elizabeth address to meet the CI, and then provide a substance to the CI in exchange for money before promptly returning to the residence. On inspection, police suspected the substance was cocaine before sending it for testing. The search-warrant affiant was a detective with extensive narcotics experience and understood how CDS were sold and packaged. In sum, even

absent positive lab results, the affidavit presented reliable information that established probable cause.[5]

If there were no lab reports at all, barring some showing that the drugs or reports were lost or misplaced, that would obviously tend to undermine the affiant's statement that he observed three controlled buys. However, defendant never supported his claims with more than mere conclusory assertions conveyed solely through counsel. We recognize that a defendant may require discovery to be able to satisfy the substantial preliminary showing Franks requires.[6] On the other hand, defendants "are not entitled to turn the discovery process into a fishing expedition." Broom-Smith, 406 N.J. Super. at 239. Nor may they utilize discovery as an indirect means of unmasking confidential informants. Id. at 240.

To obtain discovery, for purposes of a Franks hearing, even for an in-camera review, a defendant must be able to first "cast[ ] a reasonable doubt on

---

[5] At the very least, police witnessed the suspect provide imitation drugs to the CI. Assuming that the substance was not cocaine, there would have still been probable cause for a search warrant because the sale of imitation drugs is a third-degree crime. N.J.S.A. 2C:35-11.

[6] As one commentator observed, the Franks requirement "becomes an insurmountable 'Catch-22': a defense attorney cannot develop the facts until he secures a hearing and he cannot secure a hearing until he develops the facts." Albert W. Alschuler, "Close Enough for Government Work:" The Exclusionary Rule After Leon, 1984 Sup. Ct. Rev. 309, 319 (1984).

the truthfulness of statements made in the affidavit," People v. Luttenberger, 784 P.2d 633, 647 (Cal. 1990) (reviewing pre-Franks-hearing discovery request); and second, demonstrate that the requested discovery would enable the defendant to satisfy the Franks preliminary showing.

Here, defendant did not submit an affidavit, either from himself or other witnesses, to cast doubt on the statements made by the detective. Particularly since we presume an executed search warrant to be valid, Jones, 179 N.J. at 388, the trial court did not abuse its discretion in denying defendant's request for discovery on the basis of his counsel's unsupported assertions.

## B.

We turn to defendant's sentencing argument. The court imposed a mandatory extended term on the drug offense on the basis of defendant's 2001 conviction for distributing CDS in a school zone. N.J.S.A. 2C:43-6(f). The court later cited this same offense when finding aggravating factor six, N.J.S.A. 2C:44-1(a)(6) ("extent of the defendant's prior criminal record and seriousness of the offenses of which he has been convicted"). The judge stated, "I find . . . [a]ggravating [f]actor 6 based upon his prior record, which consists of one prior indictable conviction." The judge then cited the 2001 school zone conviction.

12

Defendant contends the court impermissibly double-counted the prior school zone offense.

We agree. In State v. Vasquez, 374 N.J. Super. 252, 266-68 (App. Div. 2005), the defendant, much like defendant here, had only one prior CDS conviction and municipal court convictions.[7] The State requested an extended term pursuant to N.J.S.A. 2C:43-6(f). The court granted the request. Then, relying primarily upon the "very conviction which both allowed and required an extended term[,]" the court sentenced Vasquez to the maximum available term. Vasquez, 374 N.J. Super. at 267. We held that a single prior conviction could not be used to establish both a mandatory extended term under N.J.S.A. 2C:43-6(f) and an aggravating factor. Id. at 267-68 (citing State v. Dunbar, 108 N.J. 80 (1987)).

The trial court's sentencing here is indistinguishable from that in Vasquez. The court double-counted the 2001 conviction. The court cited no other convictions to support its finding of aggravating factor six. Although we presume sentences that conform to a plea agreement are reasonable, State v.

---

[7] Defendant had two prior adjudications of delinquency, and one municipal court conviction.

<u>Sainz</u>, 107 N.J. 283, 294 (1987), we are constrained to remand for reconsideration of the sentence in light of <u>Vasquez</u>.

Affirmed as to conviction. Remanded for resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0519-17T2