**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1009-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DARRYL D. PARKER,

    Defendant-Appellant.

_____

Submitted March 17, 2025 – Decided April 7, 2025

Before Judges Gummer, Berdote Byrne, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 20-07-0220.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Kevin S. Finckenauer, Assistant Deputy Public Defender, of counsel and on the briefs).

Janetta D. Marbrey, Mercer County Prosecutor, attorney for respondent (Colin J. Rizzo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following a jury trial, defendant Darryl D. Parker was convicted of second-degree passion/provocation manslaughter, N.J.S.A. 2C:11-4(b)(2) ("amended count one"); second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a)(1) ("count six"); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) ("count eight"). On the conviction on amended count one, defendant was sentenced to a mandatory extended term of eighteen years imprisonment pursuant to the Graves Act, N.J.S.A. 2C:43-6(c), with a requirement to serve eighty-five percent of his sentence before being paroled pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, and a subsequent three-year term of parole upon being released. On the conviction on count eight, defendant was sentenced to a nine-year term of imprisonment with a four-and-a-half-year minimum parole-ineligibility period to run concurrent with the sentence imposed on the conviction on amended count one. Count six was merged with amended count one.

On appeal, defendant raises the following contentions:

POINT I

THE PROSECUTOR ENGAGED IN SUBSTANTIAL MISCONDUCT THROUGHOUT HIS SUMMATION BY REPEATEDLY DENIGRATING THE DEFENSE, ASSERTING AN ACQUITTAL WOULD BE "EXCUSING" MURDER, AND

MISSTATING THE APPLICABLE LAW, IN VIOLATION OF MR. PARKER'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

POINT II

THE TRIAL COURT DOUBLE-COUNTED THE BASIS FOR THE EXTENDED TERM IN GIVING HEAVY WEIGHT TO THE AGGRAVATING FACTORS AND FAILED TO APPLY MITIGATING FACTORS PLAINLY SUPPORTED BY THE RECORD, RESULTING IN AN EXCESSIVE EXTENDED-TERM SENTENCE.

Although we do not condone some of the language used by the prosecutor during his summation, we find any error present to be harmless, not warranting reversal because it was not clearly capable of producing an unjust result and did not lead the jury to render a verdict it otherwise might not have reached. Additionally, we reject defendant's argument that the sentencing court impermissibly "double counted" his prior convictions when imposing his sentence and conclude the sentencing court properly addressed all relevant aggravating and mitigating factors underlying defendant's convictions. Accordingly, we affirm.

A-1009-22

I.

On July 9, 2020, defendant, together with two co-defendants,[1] was indicted in connection with the death of Geovahnie Fanfan at a laundromat on September 16, 2019. The events leading up to and surrounding the victim's death were captured by video surveillance, which was played for the jury during the trial. Defendant argues only about the alleged prosecutorial error during summation and his sentence; the remaining aspects of the jury trial are not at issue in this appeal.

The following excerpts from the prosecutor's summation are challenged by defendant:

> It's really not even disputed that [defendant] purposefully and knowingly cause [Fanfan's] death. You saw it. [Defendant] . . . held that gun, steadied that gun, aimed that gun and fired at [Fanfan] from just a few feet away. The reality is that the video is so good and so complete that [defendant] simply can't defend against the video and defend against that evidence so [he has] desperately offered you an excuse.
>
> [Defendant is] asking you, the actual jury, to give [him] your permission to sit as judge, jury[,] and executioner of Geovahnie Fanfan. [Defendant is] begging you to allow [him] to commit a murder over a fight because Geovahnie, who posed absolutely no threat at the time that he was murdered, not to

---

[1] Neither co-defendant is a party in this appeal.

4

[defendant] or anyone else while he cowered inside of that office, said some words that [defendant] didn't like.

There's really only one question for you to answer when you head back into that room and that's whether Geovahnie's murder was reasonable, a reasonable reaction under the circumstances . . . .

. . . .

Ladies and gentlemen, the only purpose of firing four gunshots from point-blank range into someone's torso is to kill them. There is no dispute that that was [defendant's] intention, that [his] actions were purposeful and knowing.

. . . .

Ladies and gentlemen, this video is so clear, the evidence so overwhelmingly shows that [defendant] purposefully and knowingly killed Geovahnie, that [defendant] couldn't defend against it. So instead, [defendant] threw a few things at the wall, tried to get something to stick . . . . In truth, [he] had to. There was nothing else for [him] to say. The video doesn't lie.

[Defendant is] forced to concede that [he] purposefully and knowingly murdered Geovahnie Fanfan. But ultimately what [he is] asking you to do is to excuse [his] abhorrent behavior and to sanction murder whenever revenge justifies it. [Defendant is] asking you to decide that an execution is a reasonable response to the incident inside of the laundromat . . . .

. . . .

5

Ladies and gentlemen, think about what [defendant is] really asking you to do. Think about the bottom line in this case, <u>what [defendant is] crossing [his] fingers and hoping that you buy</u>. [He is] asking you to excuse an execution because of a fight, because of some words, because [he was] embarrassed and [he] couldn't let Geovahnie's disrespect go unpunished. [He is] asking you, as I said before, to let [him] sit as judge, jury, in your seat, and executioner in a violent act of vigilante justice.

No one is suggesting that a fight or offensive words are okay, they're not, but <u>[defendant is] asking you to sign a death warrant for anyone who gets into a fistfight, anyone that has a feud with a neighbor or a coworker</u>. [Defendant is] asking you to say that any murder that results from a fight or dispute or is triggered by offensive words is somehow justified.

. . . .

When I am done and after [the trial judge] instructs you on the law you're going to head back into that room with about [sixty] pages of legal instruction <u>but with one question to answer because the rest is clear</u>. It's all on the video. The question is whether that execution is a reasonable response to the circumstances inside of the laundromat.

After the prosecutor's summation, and outside of the jury's presence, defense counsel specifically objected to the prosecutor's "judge, jury, and executioner" language as well as the prosecutor's "death warrant" language but not the other portions cited above. The trial court overruled these objections, noting the prosecutor's language was not "anything that rose to the level of

6

disparagement" but rather " was all fair comment based upon the evidence."  The trial court also concluded "[nothing] that was said . . . would confuse the jury as to what their role or responsibility was."

The trial court then charged the jury.  In pertinent part, the court began by reminding the jury that defendant was presumed innocent and "unless each and every essential element of an offense charged is proved beyond a reasonable doubt, [defendant] must be found not guilty of that charge."  The court continued, "[t]he burden of proving each element of a charge beyond a reasonable doubt rests upon the State and the burden never shifts to the defendant[]."  The court specifically informed the jury that "[a]rguments, statements, remarks, openings[,] and summations of counsel are not evidence and must not be treated as evidence."

The court then instructed the jury as to the specific rules of law that applied in this case.  Relevant here, the trial court charged the jury as to the justification of self-defense and reminded the jury, "[t]he State has the burden to prove beyond a reasonable doubt that the defense of self-defense is untrue. This defense only applies if all the conditions or elements . . . exist.  The defense must be rejected if the State disproves any of the conditions beyond a reasonable

A-1009-22

doubt."  The trial court's instruction as to the substantive factors for self-defense mirrored the Model Jury Charges and were given as follows:

> [T]he use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> . . . Self-defense is also the right of a person to defend against seriously threatened unlawful force that is actually pending or reasonably anticipated.  When a person is in imminent danger of bodily harm the person has the right to use force, . . . even deadly force, when that force is necessary to prevent the use against him of unlawful force.  The force used by the defendant must not be significantly greater than and must be proportionate to the unlawful force threatened or used against the defendant.

The court then charged the jury as to the State's burden of proving murder and the lesser-included offenses of passion/provocation manslaughter, aggravated manslaughter, and reckless manslaughter.  The jury returned a verdict convicting defendant of second-degree passion/provocation manslaughter, second-degree possession of a weapon for unlawful purposes, and second-degree unlawful possession of a weapon.

At defendant's sentencing hearing, the court addressed the aggravating and mitigating factors underlying defendant's convictions.  It found three aggravating factors:  aggravating factor three, "[t]he risk that the defendant will

A-1009-22

commit another offense"; aggravating factor six, "[t]he extent of the defendant's prior criminal record and the seriousness of the offenses of which he/she has been convicted"; and aggravating factor nine, "[t]he need for deterring the defendant and others from violating the law." It found only one mitigating factor: "[t]he defendant acted under a strong provocation." Ultimately, the sentencing court found the aggravating factors substantially outweighed the mitigating factors.

This direct appeal of defendant's convictions and sentence followed.

## II.

Defendant raises two issues on appeal: (1) prosecutorial error during the State's summation warrants a new trial; and (2) his sentence is impermissibly excessive because the court "double-counted" his prior armed-robbery convictions when applying them to impose a Graves Act mandatory extended term and finding aggravating factor six and failed to apply mitigating factors "plainly supported by the record."

A. <u>Whether Prosecutorial Error Existed to Deprive Defendant of a Fair Trial.</u>

We reverse a conviction for prosecutorial error when the alleged error was "clearly and unmistakably improper" and "so egregious" in the context of the

A-1009-22

trial as a whole that it deprived the defendant of a fair trial.  State v. Pressley, 232 N.J. 587, 593-94 (2018).

A prosecutor's role is "'uniquely challenging' because it is a 'double calling'—to represent vigorously the [S]tate's interest in law enforcement and at the same time help assure that the accused is treated fairly and that justice is done.'"  State v. McNeil-Thomas, 238 N.J. 256, 274-75 (2019) (quoting State v. Mahoney, 188 N.J. 359, 376 (2006)).  Accordingly, "[t]he duty of the prosecutor 'is as much . . . to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'"  State v. Smith, 212 N.J. 365, 403 (2012) (omission in original) (quoting State v. Frost, 158 N.J. 76, 83 (1999)).  "While 'prosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries' and are 'afforded considerable leeway,' 'their comments [should be] reasonably related to the scope of the evidence presented.'"  State v. Williams, 244 N.J. 592, 607 (2021) (alteration in original) (quoting Frost, 158 N.J. at 82).  Moreover, the State may not "present[] the jury with the spectacle of a figure of authority distorting and demeaning the role of a defense attorney," State v. Sherman, 230 N.J. Super. 10, 16 (App. Div. 1988), nor may it "cast unjustified aspersions on

10

defense counsel's motives," State v. Lockett, 249 N.J. Super. 428, 434 (App. Div. 1991).

"In deciding whether prosecutorial [error] deprived a defendant of a fair trial, '[we] must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred.'" Williams, 244 N.J. at 608 (quoting Frost, 158 N.J. at 83). When making that determination, we consider the following three factors: "(1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them." Ibid. (quoting Frost, 158 N.J. at 83).

"Notwithstanding the prosecutor's obligation to ensure that justice is served, 'even when a prosecutor's remarks stray over the line of permissible commentary, our inquiry does not end.'" Ibid. (quoting McNeil-Thomas, 238 N.J. at 275). We are obligated to weigh "the severity of the [error] and its prejudicial effect on the defendant's right to a fair trial," State v. Wakefield, 190 N.J. 397, 437 (2007), and will reverse and remand "only if 'the conduct was so egregious as to deprive [the] defendant of a fair trial,'" Williams, 244 N.J. at 608 (quoting Wakefield, 190 N.J. at 437); see also R. 2:10-2 ("Any error or omission

11

shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result. . . ."). In other words, we must decide whether the prosecutor's error "'led the jury to a verdict it otherwise might not have reached'" when considering "the context of the entire record." State v. Sowell, 213 N.J. 89, 108-09 (quoting State v. R.B., 183 N.J. 308, 330 (2005)); see also State v. Colbert, 190 N.J. 14, 31 (2007) ("[T]he question for the appellate court [when determining harmless error] [is] simply whether in all the circumstances there was a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits. . . ." (quoting State v. Macon, 57 N.J. 325, 338 (1971))).

Although we do not condone the language employed by the State in its summation and objected to by defense counsel, we conclude the prosecutor did not "'le[a]d the jury to a verdict it otherwise might not have reached'" when considering "the context of the entire record." Sowell, 213 N.J. at 108-09 (quoting R.B., 183 N.J. at 330).

When considering the context in which the prosecutor's statements were made, the statements were an effort to sway the jury to convict defendant of murder, which the jury ultimately did not do. Thus, in rendering its verdict, the

jury could have been swayed by the prosecutor's comments only with respect to its disregard of defendant's self-defense argument.

For the jury's verdict to stand despite prosecutorial error, the error must be "harmless beyond a reasonable doubt." State v. Jackson, 243 N.J. 52, 72 (2020) (quoting State v. Bass, 224 N.J. 285, 307 (2016)); see also Macon, 57 N.J. at 337-38. We conclude the prosecutor's error was harmless beyond a reasonable doubt because defendant's actions, even when addressed in a light most favorable to him, cannot establish self-defense. Self-defense may be used "as an affirmative defense to an otherwise criminal act of homicide." State v. Fowler, 239 N.J. 171, 184 (2019). N.J.S.A. 2C:3-4(a) provides the principles of this justification: "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." [2] See also Model Jury Charges (Criminal), "Justification—Self Defense, In Self Protection (N.J.S.A. 2C:3-4)" (rev. Nov. 13, 2023).

---

[2] "'Unlawful force' means force . . . which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or actionable tort or would constitute such offense or tort. . . ." N.J.S.A. 2C:3-11(a).

13

Although deadly force[3] may be justifiable, Fowler, 239 N.J. at 185, "[t]he Legislature has limited the use of deadly force in self-defense," State v. Macchia, 253 N.J. 232, 251 (2023). N.J.S.A. 2C:3-4(b)(1)(b)(iii)(2) provides "[t]he use of deadly force is not justifiable . . . unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm." See also Model Jury Charges (Criminal), "Justification—Self Defense, In Self Protection (N.J.S.A. 2C:3-4)." Moreover, "the defensive force must be proportional to the offensive force." State v. Montalvo, 229 N.J. 300, 319 (2017); see also Model Jury Charges (Criminal), "Justification—Self Defense, In Self Protection (N.J.S.A. 2C:3-4)."

The jury was properly charged with the requirements for self-defense based on the Model Jury Charge for N.J.S.A. 2C:3-4; it was aware of the substantive requirements of defendant's self-defense justification when it deliberated. See State v. Pleasant, 313 N.J. Super. 325, 333-35 (App. Div. 1998), aff'd, 158 N.J. 149 (1999). The record reflects defendant shot the victim with a firearm when the victim was unarmed. The video evidence shown at trial,

---

[3] "'Deadly force' means force which the actor uses with the purpose of causing or which he knows to create a substantial risk of causing death or serious bodily harm. Purposely firing a firearm in the direction of another person . . . constitutes deadly force . . . ." N.J.S.A. 2C:3-11(b).

and made available to us, reveals the aggressor—whom the jury found was defendant—and the victim were separated by a room, with the victim crouched in the corner hiding from defendant who then pointed a firearm at the victim from the other room.

Although the video is silent and does not disclose what the victim shouted before he was shot, witness testimony provided the victim "was yelling for his friends to kill" defendant. Even if this were true, a reasonable jury could not find defendant lawfully used deadly force in self-defense in these circumstances because the victim was not using any force against defendant in that instance. See N.J.S.A. 2C:3-4(a). Defendant's use of deadly force against the victim was not proportional to the victim's general calls for someone to "kill" defendant. See N.J.S.A. 2C:3-11(b) ("A threat to cause death or serious bodily harm, by the production of a weapon or otherwise, so long as the actor's purpose is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force."). We conclude any prosecutorial error which may have occurred does not warrant reversal because it was not enough to "'le[a]d the jury to a verdict it otherwise might not have reached'" when considering "the context of the entire record," and affirm defendant's convictions. Sowell, 213 N.J. at 108-09 (quoting R.B., 183 N.J. at 330).

B.    Whether Defendant's Sentence was Lawful.

Our review of the legality of a sentence is de novo.  State v. Jones, 478 N.J. Super. 532, 541 (App. Div,), certif. denied, 259 N.J. 304 (2024), 259 N.J. 314 (2024), and 259 N.J. 315 (2024).   Defendant makes two arguments challenging his sentence:  first, he contends the court impermissibly "double counted" his prior armed-robbery convictions when using them to impose a mandatory extended term pursuant to N.J.S.A. 2C:44-3(d) of the Graves Act and by applying the prior convictions to find aggravating factor six; second, he argues the trial court improperly failed to consider the mitigating factors underlying his case.  Both arguments are unavailing as they are belied by the record and relevant caselaw.

With regard to defendant's "double counting" argument, we dispelled this identical argument in State v. McDuffie, 450 N.J. Super. 554, 576 (App. Div. 2017), where "we reject[ed], as lacking merit, [the defendant's] claim the [trial] court impermissibly double-counted his criminal record, when granting the State's motion for a discretionary extended term, and again, when imposing aggravating factor six, which considers the extent and seriousness of defendant's prior record."  Although we acknowledged "'[f]acts that establish[] elements of a crime for which a defendant is being sentenced should not be considered as

16

aggravating circumstances in determining that sentence,'" we distinguished the defendant's case from this legal principle as "[the defendant's] criminal history was not a 'fact' that was a necessary element of an offense for which he was being sentenced."  Ibid. (second alteration in original) (quoting State v. Kromphold, 162 N.J. 345, 353 (2000)).

Defendant's argument is based on facts that mirror the facts of McDuffie, as that defendant also was found to have met aggravating factor six based on his prior criminal history and was sentenced to an extended term based on certain prior offenses.  As in McDuffie, defendant's criminal history was not a "fact" necessary to convict him of passion/provocation manslaughter, second-degree possession of a weapon for unlawful purposes, or second-degree unlawful possession of a weapon.  See N.J.S.A. 2C:11-4(b)(2); N.J.S.A. 2C:39-4(a)(1) to -5(b)(1).

Defendant's reliance on our decision in State v. Vasquez, 374 N.J. Super. 252 (App. Div. 2005), is misplaced as the language he cites is not contrary to our holding in McDuffie.  See Vasquez, 374 N.J. Super. at 267 ("[F]actors invoked by the Legislature to establish the degree of the crime should not be double counted when calculating the length of the sentence." (alteration in original) (quoting State v. Miller, 108 N.J. 112, 122 (1987))).  As stated above,

17

defendant's prior armed-robbery convictions were not elements of the crimes for which he was convicted, nor were these prior convictions used to establish the degree of those crimes. See N.J.S.A. 2C:11-4(b)(2); N.J.S.A. 2C:39-4(a)(1) to -5(b)(1). As such, defendant's "double counting" argument is unavailing.

Defendant's argument that the court failed to consider the mitigating factors underlying his case is proven false by a review of the record, which demonstrates all potentially mitigating factors were thoroughly considered and discussed by the court. State v. Jaffe, 220 N.J. 114, 122 (2014). (In imposing sentence, the court must make an individualized assessment of the defendant based on the facts of the case and the aggravating and mitigating sentencing factors.) In fact, the court found mitigating factor three, "[t]he defendant acted under strong provocation," consistent with his self-defense argument. As the court articulated detailed reasons in declining to find other mitigating factors, and because it weighed all of the established mitigating and aggravating factors when it imposed defendant's sentence, its refusal to accept any other mitigating factor and its subsequent conclusion the aggravating factors substantially outweighed the lone mitigating factor were within its sound discretion and do not amount to reversible error. See State v. Case, 220 N.J. 49, 53-54 (2014).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division          A-1009-22