# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4916-15T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

R.H.,[1]

     Defendant-Appellant.

_____

Argued February 13, 2019 – Decided March 29, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 12-06-0516 and 15-10-0645.

Cody T. Mason, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Cody T. Mason, of counsel and on the brief).

Meredith L. Balo, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for

---

[1] We use initials to preserve defendant's anonymity because he was a confidential informant.

respondent (Michael A. Monahan, Acting Union County Prosecutor, attorney; Meredith L. Balo, of counsel and on the brief).

PER CURIAM

Defendant R.H. appeals from February 24, 2016 convictions, after two trials before the same jury. He was first convicted of Indictment No. 15-10-0645: first-degree robbery, N.J.S.A. 2C:15-1; second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); and second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b). The same jury then convicted defendant of Indictment No. 12-06-0516: two counts of certain persons not to have weapons for the same gun on the same date, N.J.S.A. 2C:39-7.[2] The trial court sentenced defendant to an aggregate term of forty years in prison, including a thirty-year prison sentence for robbery, subject to an eighty-five percent parole ineligibility period pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and a consecutive ten-year prison sentence with five years parole ineligibility.

On appeal, defendant argues the court erred by barring evidence of his status as a confidential informant until midtrial, admitting portions of a redacted

_____

[2] The parties agree, based on the prior convictions of defendant alleged in each count, that count one is a second-degree crime, N.J.S.A. 2C:39-7(b) and count two a fourth-degree crime, N.J.S.A. 2C:39-7(a).

interview transcript prejudicial to him, failing to instruct the jury on the lesser-included charge of second-degree robbery and improperly instructing the jury during the second, certain persons, trial. Defendant also alleges the State committed prosecutorial misconduct multiple times throughout the course of the robbery trial and that his sentence was improper. We affirm the convictions, but remand for resentencing.

On January 4, 2012, around 8 p.m., at the conclusion of a driving lesson, the victim and her instructor, Henry Ansah, stopped at a bank in Elizabeth so that the victim could use the ATM to withdraw money to pay for the lesson. While the victim was in the ATM vestibule, defendant entered behind her and demanded money. When the victim refused, defendant showed her a gun. The victim gave defendant $100 she had just withdrawn from the ATM. At defendant's direction, she withdrew an additional $200. The victim testified that she believed the gun defendant showed her was genuine, and he was going to kill her. After the victim told Ansah what happened, he brought her back to the bank to see if defendant was still there and to retrieve her debit card, left at the ATM.

When Elizabeth Police Detective Athanasios Mikros arrived at the scene, he identified defendant based on the bank's still photos and surveillance video.

Detective Mikros and Detective James DiOrio interviewed defendant. DiOrio read defendant his Miranda[3] warnings, and informed defendant that he was under arrest based on an Essex County Sheriff's warrant for a weapons offense. Before Mikros and DiOrio began to question defendant about the January 4 ATM robbery, they questioned him about another robbery where a gun was used. This part of the interview, in addition to references to defendant's past crimes and his status as a confidential informant, was redacted from the transcript and video of the interrogation presented to the jury.

Defendant admitted that he was the individual in the photographs and surveillance video. He explained that he went to the bank with a man named Rock to sell drugs to the victim and use the money to buy more drugs. Defendant claimed he entered the ATM vestibule to make sure the victim was getting the correct amount of money. He told the victim the drugs would cost $250. The victim gave him the money. He then ordered the victim to "take another [$200] out." Defendant explained that he robbed the victim because he is a drug addict. After the detectives continued to question him about the gun that he used to commit the robbery, defendant asked, "what can I do to get around this shit?"

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

Defendant said he would not give the detectives the gun unless he got "something good" in return.

After the interview, the detectives accompanied defendant to his mother's house in Elizabeth. Inside, defendant pointed to a bedroom chair piled with clothes. A BB gun was found under the clothes. Mikros also found a scarf and hat that defendant wore during the robbery.

At trial, defendant provided another explanation. He testified that on the evening of January 4, 2012, he was waiting with his acquaintance, Rock, to meet a woman at the bank. Defendant was there to sell the woman fraudulent identification. She had purchased a New Jersey driver's license and a social security card from them for $250, and he had traveled with Rock to the bank to complete the transaction. Defendant went into the ATM vestibule to speak to the victim. After the victim gave him $100, he informed her that the total was $250, so she withdrew more money.

Defendant admitted to having a gun in his hand

> because [there] . . . was an individual outside when I first pulled up, all black on, walking back and forth, walking towards the door and then walk[ing] back off. So I pulled the gun out because I didn't know whether or not he's trying to, you know, play me out or he was with her.

A-4916-15T1

Defendant told the victim to wait while he went to get the social security card from Rock, and $50 change from the sale of the fraudulent identification. When he returned to Rock's car, he saw the victim, the individual dressed in black, and another person enter a car and drive off. He gave Rock $250 and kept the additional $50 for himself.

Defendant said the gun was a toy, which he wanted to appear genuine to scare the individual outside the bank. Defendant explained that the gun he discussed during the police interview was not the gun used during the robbery.

Defendant testified he was being sarcastic when he admitted to the police he had robbed the victim because he was a drug addict. He claimed: "I realized they [were] trying to basically trick me into saying what they . . . wanted me to say." After a midtrial ruling admitting evidence of defendant's status as a confidential informant, defendant testified that he had been a confidential informant for Mikros, DiOrio and another detective.

The victim testified in rebuttal that she never sought to obtain fraudulent identification, explaining, "I have my green card and my social so I don't need to go to somebody for a fake license." She explained that when defendant approached her, he said, "give me money," and when she responded "no," he showed her a gun.

A-4916-15T1

Defendant raises the following issues on appeal:

POINT I: [R.H.]'S CONVICTIONS MUST BE REVERSED BECAUSE THE COURT STOPPED HIM FROM PRESENTING A FULL DEFENSE WHEN IT BARRED INFORMATION ABOUT HIS STATUS AS AN INFORMANT UNTIL MIDTRIAL, REDACTED RELEVANT PORTIONS OF THE INTERROGATION, AND BARRED OTHER RELATED EVIDENCE.

POINT II: THE COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED, WITHOUT LIMITING INSTRUCTIONS, FOOTAGE OF THE DETECTIVES DISCUSSING [R.H.]'S CHARACTER TO HARM OTHERS AND HIS PARTICIPATION IN OTHER ROBBERIES, THE COMPLAINANT'S DECENCY AND CHARACTER FOR TRUTHFULNESS, AND THEIR OPINION THAT A JURY WOULD CONVICT [R.H.] BASED ON THE EVIDENCE. (NOT RAISED BELOW).

A. REVERSAL IS REQUIRED BECAUSE THE DETECTIVES' ASSERTIONS OF [R.H.]'S WILLINGNESS TO HARM PEOPLE, HIS INVOLVEMENT WITH OTHER ROBBERIES, AND THE COMPLAINANT'S CREDIBILITY WERE INADMISSIBLE AND PREJUDICIAL BAD-ACT AND CHARACTER EVIDENCE.

B. REVERSAL IS REQUIRED BECAUSE THE STATE PRESENTED INADMISSIBLE EVIDENCE CONCERNING THE DETECTIVES' OPINIONS REGARDING [R.H.]'S GUILT AND THE STRENGTH OF THE CASE AT TRIAL.

POINT III: THE PROSECUTOR ENGAGED IN REVERSIBLE MISCONDUCT WHEN HE SHIFTED

7

THE BURDEN OF PROOF, MISSTATED THE FACTS OF THE CASE, FRAMED A GUILTY VERDICT AS THE ONLY JUST RESULT, AND BOLSTERED THE STATE'S WITNESS' CREDIBILITY WHILE DISPARAGING [R.H.]. (NOT RAISED BELOW).

A. REVERSAL IS REQUIRED BECAUSE THE COURT DID NOT ADEQUATELY ADDRESS THE PROSECUTOR'S COMMENTS THAT THE JURY COULD ONLY ACQUIT IF IT BELIEVED [R.H.] AND DISBELIEVED THE COMPLAINANT, WHICH RESTRICTED THE JURY'S DELIBERATIONS AND SHIFTED THE BURDEN OF PROOF.

B. THE PROSECUTOR ENGAGED IN REVERSIBLE MISCONDUCT UNADDRESSED BY THE COURT WHEN HE INCORRECTLY STATED THAT [R.H.] LEFT BELONGINGS IN HIS SON'S BEDROOM SUCH THAT IT DID NOT MATTER IF THE BB GUN WAS RECOVERED THERE.

C. THE PROSECUTOR COMMITTED PLAIN ERROR WHEN HE FRAMED A GUILTY VERDICT AS THE ONLY JUST RESULT, DISPARAGED [R.H.]'S CREDIBILITY AND CHARACTER, AND VOUCHED FOR THE CREDIBILITY OF THE COMPLAINANT AND LEAD DETECTIVE.

POINT IV: THE COURT ERRED IN REFUSING TO CHARGE THE LESSER-INCLUDED OFFENSE OF SECOND-DEGREE ROBBERY AND IN FACTUALLY LIMITING THE LESSER-INCLUDED THEFT CHARGE.

A. REVERSAL IS REQUIRED BECAUSE THE COURT FAILED TO CHARGE THE JURY ON SECOND-DEGREE ROBBERY.

8

B. REVERSAL IS REQUIRED BECAUSE THE COURT'S LESSER-INCLUDED THEFT CHARGE UNDULY LIMITED THE JURY'S CONSIDERATION OF THE OFFENSE.

POINT V:  THE COURT ERRED DURING THE SEPARATE TRIAL ON THE CERTAIN-PERSON OFFENSES IN NOT CHARGING THE JURY ON ISSUES SUCH AS ITS ROLE IN JUDGING CREDIBILITY AND [R.H.]'S ELECTION NOT TO TESTIFY.  (NOT RAISED BELOW).

POINT VI:  THE CUMULATIVE EFFECT OF THE TRIAL ERRORS DEPRIVED [R.H.] OF DUE PROCESS AND A FAIR TRIAL AND WARRANTS REVERSAL OF HIS CONVICTIONS. (NOT RAISED BELOW).

POINT VII: A REMAND IS REQUIRED BECAUSE THE COURT DID NOT ADEQUATELY EXPLAIN THE SENTENCE IMPOSED, DID NOT PROPERLY ANALYZE WHETHER CONSECUTIVE SENTENCES WERE APPROPRIATE, FAILED TO AWARD A DAY OF JAIL CREDIT, DID NOT PROPERLY GRADE AND MERGE THE CERTAIN-PERSON OFFENSES, AND IMPROPERLY IMPOSED $30 IN FINES.

A. A REMAND IS REQUIRED BECAUSE THE COURT DID NOT ADEQUATELY EXPLAIN THE SENTENCE IMPOSED, DID NOT PROPERLY ANALYZE WHETHER CONSECUTIVE SENTENCES WERE WARRANTED, AND WITHHELD A DAY OF JAIL CREDIT.

B.  A REMAND IS REQUIRED BECAUSE THE COURT ERRED IN GRADING THE CERTAIN-

PERSON WEAPON OFFENSE AS A SECOND-DEGREE CRIME, AND IN NOT MERGING IT WITH THE CERTAIN-PERSON FIREARM OFFENSE.

C. A REMAND IS REQUIRED BECAUSE THE COURT ERRED IN IMPOSING TWO $30 N.J.S.A. 2C:43- 3.3 FINES.

I.

Prior to the start of trial, the court denied defendant's application to admit evidence that he was a confidential informant. At defendant's request, the court also barred testimony and redacted portions of the transcript of the police interview and video discussing an additional gun used in a separate robbery.

"[T]he decision to admit or exclude evidence is one firmly entrusted in the court's discretion." State v. Scott, 229 N.J. 469, 479 (2017) (alteration in original) (quoting Estate of Hanges v. Metropolitan Property & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). We review a court's evidentiary rulings under an abuse of discretion standard and do "not 'substitute [our] own judgement for that of the court' unless there was a 'clear error in judgment' -- a ruling so 'wide off the mark that a manifest denial of justice resulted.'" Ibid. (quoting State v. Perry, 225 N.J. 222, 233 (2016)).

Our Supreme Court has recognized:

The Federal and New Jersey Constitutions guarantee criminal defendants "a meaningful opportunity to

10

present a complete defense." "That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on . . . credibility . . . when such evidence is central to the defendant's claim of innocence."

[State v. Garron, 177 N.J. 147, 167 (2003) (citations omitted) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)).]

Generally, other-crimes evidence is admissible only if it passes the rigorous test outlined in State v. Cofield, 127 N.J. 328, 338 (1992). See also State v. Weaver, 219 N.J. 131, 150 (2014). However, "[a] defendant generally may introduce 'similar other-crimes' evidence defensively if in reason it tends, alone or with other evidence, to negate his [or her] guilt." Ibid. (quoting State v. Garfole, 76 N.J. 445, 453 (1978)). Rule 401 governs the admissibility of other-crimes evidence used defensively. "[P]rejudice to the defendant is no longer a factor" and the standard is "simple relevance to guilt or innocence." Ibid. (quoting Garfole, 76 N.J. at 452-53). "[A] defendant need only show that the evidence offered has a rational tendency to engender a reasonable doubt about an essential element of the State's case." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 4 on N.J.R.E. 401 (2018).

## A. Confidential Informant.

Defendant sought to introduce evidence that he had previously worked as a confidential informant for the police. The court initially barred this testimony as not relevant, and prejudicial to defendant, even though defendant sought its admission. It also stated that evidence of defendant's role as a confidential informant would:

> open up . . . a Pandora's box . . . [regarding allegations] that at times the police in appreciation or payment [for defendant's cooperation as a confidential informant] would permit the defendant to keep drugs and/or money, things like that. . . . Now the Elizabeth Police are going to be on trial. . . . I'm not saying it didn't happen. . . . My concern is . . . confusion for the jury, taking their focus away from this case . . . The focus should not be on . . . . the details of the relationship between [defendant] and the Elizabeth Police.

The court explained that it would reconsider its decision after Detective Mikros testified, if defendant chose to testify.

During cross-examination of defendant at trial, the State asked defendant: "Why would you [bring detectives to your son's gun] if that's not the gun you used in the . . . alleged robbery?" Based on this question, defense counsel renewed her motion to permit defendant to testify about his status as a confidential informant. The court changed its prior ruling, explaining, "the [c]ourt now finds. . . defendant's prior relationship with the police as a

12 <sup>A-4916-15T1</sup>

[confidential informant] relevant . . .[;] the [c]ourt does not find it relevant that the police would allegedly permit the defendant to keep drugs in exchange for the defendant's information."

Based on the changed ruling, defense counsel asked defendant additional questions before the State resumed its cross-examination. Defendant said he had been a confidential informant for three detectives for about two years, during which he had been compensated by the police. When he was picked up by the detectives on January 11, 2012, he believed he was going to discuss an event that occurred at another housing project. He was not aware he was under arrest or that the statement he was giving would be used against him. He made statements during the police interview contrary to what he eventually testified to at trial "because I was a confidential informant and this is what I normally do when I go into the station."

On summation, defense counsel argued that, due to defendant's role as a confidential informant, he "bargained for leniency" with the detectives. Defense counsel argued: "That's what [R.H.] does. He bargains with them. I give you this, you give me that. I say this for you, you give me this. That's what he does." Defense counsel explained:

> That's why he didn't tell them the story that night, because he's so used to being in that room. How many

times has he been in that room where they're feeding him cues and he just repeats what they're saying. He didn't realize he was being recorded because most of the other times he's not. He didn't realize he was giving a statement.

Because the court changed its ruling mid-trial, defendant was able to present a complete defense concerning his role as a confidential informant, and thus did not suffer prejudice from the earlier ruling.

## B. Other-crimes evidence.

While the court permitted defendant to present confidential informant evidence, he was unable to present evidence that when he previously incriminated himself in front of the detectives, they "protected him from prosecution." The court additionally barred testimony discussing an additional gun.

The court did not abuse its discretion by ruling inadmissible evidence defendant had previously incriminated himself in front of the detectives, who then protected him from prosecution, because it would "'divert the minds of the jurors from a reasonable and fair evaluation' of the issues in the case." See State v. Brockington, 439 N.J. Super. 311, 333 (App. Div. 2015) (quoting State v. Long, 173 N.J. 138, 164 (2002)).

A-4916-15T1

## II. Detectives' Statements.

Defendant argues for the first time on appeal that the court committed plain error by admitting, through the video and transcript of the police interview, detectives' statements discussing defendant's "alleged willingness to harm people, his possible involvement in other robberies, the victim's good character for truthfulness, and their opinion that a jury would convict [defendant] of robbery." Arguments not raised in the trial court are reviewed under the plain error standard, and we will not reverse unless there was error that is "clearly capable of producing an unjust result." R. 2:10-2; see also State v. Pressley, 232 N.J. 587, 593 (2018).

When applying the plain error standard to evidence that should have been excluded, "the error will be disregarded unless a reasonable doubt has been raised whether the jury came to a result that it otherwise might not have reached." State v. R.K., 220 N.J. 444, 456 (2015). Our Supreme Court has "insisted that, in opposing the admission of evidence a litigant must 'make known his position to the end that the court may consciously rule upon it.'" State v. Robinson, 200 N.J. 1, 19 (2009) (quoting State v. Abbott, 36 N.J. 63, 76 (1961)). The detectives' recorded statements do not meet the plain error standard.

## A. Defendant's Prior Bad Acts.

During the police interview, the detectives questioned defendant on how he knew that the door to the ATM would be unlocked. DiOrio asked defendant, "How did you know the door was broken at that bank? Were you there a few days earlier robbing someone else?" Mikros told defendant he "want[ed] to know why did you rob her . . . [a]nd where's the gun?" He then stated, speaking of another attempted robbery: "You had the perfect opportunity. You know the daughter is in fucking line and you want to go rob her. That's what you did. You pointed a gun. She didn't give you the money."

Following that statement, DiOrio began to discuss the robbery of the victim, stating: "Why would a lady who don't know you from Adam, take a hundred dollars out, which she intended to, and then start another transaction and take [another] $200 dollars . . . out?" The redacted version of the transcript, presented at trial to the jury, does not suggest that two separate robberies were being discussed during the interview.

For the first time on appeal, defendant argues that these portions of the transcript were improperly admitted as evidence of defendant's prior bad acts. The primary concern is that "the jury may convict the defendant because he is 'a "bad" person in general.'" Cofield, 127 N.J. at 336 (quoting State v. Gibbons,

105 N.J. 67, 77 (1987)); see also State v. Garrison, 228 N.J. 182, 193-94 (2017) (explaining that "[o]ne of the well-recognized dangers inherent in the admission of so-called 'other-crimes evidence' is that a jury may convict a defendant not for the offense charged, but for the extrinsic offense") (quoting State v. Skinner, 218 N.J. 496, 514 (2014)). These statements do not demonstrate prior bad acts of defendant and were not prejudicial.

## B. Defendant's Bad Character.

During the police interview, the detectives questioned defendant about whether the gun used in the robbery of the victim was real or fake. DiOrio told defendant that he did not think the gun was real, because if it was, defendant would have pulled it out of his pocket and put it to the victim's head. For the first time on appeal, defendant argues that this statement constituted bad-character evidence, and suggested that defendant had a violent disposition. Again, in itself it is merely a comment by the detective and not proof of bad character.

## C. The Victim's Good Character.

Defendant additionally argues that the State improperly bolstered the victim's credibility and character when, during the police interview, the detectives stated that she was "not a drug user," was "an innocent lady," and was

"[not] making [the alleged robbery] up." In the context of the interrogation this was not harmful.

### D. Detectives' opinion.

During the police interview, the detectives told defendant of the strength of the State's case. For example, Mikros stated, "Even if we don't have the gun, you have enough to go down. You're not gonna win this. You're not. We're not lying to you." Defendant argues that these statements were "akin to opinion testimony regarding the ultimate issue of guilt. . . ." Lay opinion testimony "can only be admitted if it falls within the narrow bounds of testimony that is based on the perception of the witness and that will assist the jury in performing its function." State v. McLean, 205 N.J. 438, 456 (2011); N.J.R.E. 701.

Defendant argues, for the first time on appeal, that the detectives' interview statements were improper opinion testimony, evidence of defendant's bad character and the victim's good character, as well as evidence of defendant's prior bad acts. The statements were made in the videotaped interview to coax defendant into confessing. Their admission as part of that taped interview was not "clearly capable of producing an unjust result." See R. 2:10-2.

## III. Prosecutorial Misconduct.

Defendant next argues that the State committed misconduct by shifting the burden of proof, misstating facts of the case, and, for the first time on appeal, by framing a guilty verdict as the only just result and bolstering the credibility of its witnesses. When a defendant alleges that the prosecutor engaged in misconduct, the court must "assess whether the defendant was deprived of the right to a fair trial." Pressley, 232 N.J. at 593; see also State v. Wakefield, 190 N.J. 397, 437 (2007). "Thus, '[t]o justify reversal, the prosecutor's conduct must have been "clearly and unmistakably improper," and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense.'" Wakefield, 190 N.J. at 438 (alteration in original) (quoting State v. Papasavvas, 163 N.J. 565, 625 (2000)).

The prosecutor is afforded wide latitude during summations, as long as he or she "stays within the evidence and legitimate inferences therefrom. . . ." State v. R.B., 183 N.J. 308, 330 (2005) (quoting State v. Mayberry, 52 N.J. 413, 437 (1968)). During summation, prosecutors are also permitted to "respond to an issue or argument raised by defense counsel." State v. Johnson, 287 N.J. Super. 247, 266 (App. Div. 1996). "In reviewing closing arguments, we look, not to

isolated remarks, but to the summation as a whole." State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008).

### A. Shifting the burden of proof to defendant.

Defendant argues that the prosecutor committed reversible misconduct by improperly shifting the burden of proof by informing the jury that they could only acquit defendant if they did not believe the victim. Defendant further argues that the court's curative instruction was inadequate.

During summation, the prosecutor stated:

> If you are to believe the defendant's story, there are very important assumptions and very important decisions that you have to make . . . . You would have to believe the victim is lying about the robbery.

After defense counsel objected, the court issued a curative instruction to the jury:

> [T]here was also a comment [the prosecutor] made[,] something along the lines of to find the defendant not guilty you'd have to accept his version of the events. In reality -- and the jury charge is going to tell you that you can believe or disbelieve all or parts of the testimony of any of the witnesses. That's completely up to you.

The court later instructed the jury on its ability to make credibility determinations:

20

> As the judges of the facts you are to determine the credibility of the witnesses . . . . Through this analysis as judges of the facts you weigh the testimony of each witness and then determine the weight to give to it. Through that process you may accept all of it, a portion of it, or none of it.

Finally, the court instructed the jury:

> [T]he burden of proof is on the State. The defendant is, therefore, not required to prove that he acted pursuant to a claim of right, rather, the burden is on the State to prove the defendant did not act pursuant to a claim of right. Thus, if the State has proven all the elements of robbery or theft beyond a reasonable doubt . . . then you must find the defendant guilty of robbery or theft.

A prosecutor may never suggest a shifting of the burden of proof to defendant. State v. Loftin, 146 N.J. 295, 389 (1996). Here, the prosecutor responded to defense counsel's attack in summation on the victim's credibility and her explanation of the robbery as "bizarre." At defendant's request, the trial judge promptly issued an effective curative instruction to the jury, neutralizing any possible prejudice caused by the remarks. We find no unaddressed, prejudicial misconduct.

## B. Other Prosecutor Misconduct.

Defendant next argues that the prosecutor committed reversible misconduct by making improper inferences from the evidence, framing a guilty verdict as the only just result, and bolstering the credibility of the victim while

21

attacking the character of defendant. These issues are without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

## IV. Jury Charges.

Proper jury charges are essential for a defendant to receive a fair trial. State v. Green, 86 N.J. 281, 287 (1981). "The trial judge has a mandatory duty to charge the jury on the fundamental principles of law which control the case . . . ." State v. Holmes, 208 N.J. Super. 480, 490 (App. Div. 1986) (quoting State v. Fair, 45 N.J. 77, 90 (1965)). N.J.S.A. 2C:1-8(e) states: "The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."

If a rational basis exists for charging the jury with the lesser-included offense, "a court's failure to give the requested instruction is reversible error." State v. Carrero, 229 N.J. 118, 128 (2017). When determining if "the rational-basis test has been satisfied, the court must view the evidence in the light most favorable to the defendant." Ibid.

Defendant was charged with first-degree robbery.

> Robbery is a crime of the second degree, except that it is a crime of the first degree if in the course of committing the theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon.

22

[N.J.S.A. 2C:15-1(b) (emphasis added).]

N.J.S.A. 2C:11-1(c) provides that if the victim reasonably believed the instrument used "to be capable of producing death or serious bodily injury," the instrument is a deadly weapon for the purposes of the statute.  Thus, "any device, instrument or the like will make robbery a crime of the first degree if the victim reasonably believes it to be a deadly weapon."  Cannel, N.J. Criminal Code Annotated, cmt. 6 on N.J.S.A. 2C:15-1 (2018).

The court rejected defendant's request for a lesser-included offense charge, concluding there was no rational basis in the record for a charge of second-degree robbery.  "There is nothing that I could find that would indicate a rational basis for the jury to conclude it was a second[-]degree robbery.  [The victim] says, you know what?  He had a gun.  He threatened me with it . . . by . . . [making] gestures.  He said give me the money."  The judge further explained that defendant testified "[i]t was a business transaction . . . and the only reason he ever had the gun or reached for the gun . . . [was] because he had a concern of what was happening outside the ATM . . . ."

In order for a rational basis for second-degree robbery to exist, the jury would have to find that defendant was guilty of robbery, but that he was not "armed with, or [did not] use[] or threaten[] the immediate use of a deadly

23

weapon." N.J.S.A. 2C:15-1(b). The victim testified that when she refused to give defendant money, he showed her a black gun. She thought the weapon defendant had was a real gun, and gave him money "because I thought he was going to shoot me, like [I was] going to die that night[,] I was so scared."

Defendant testified that he had a toy gun in his hand when interacting with the victim, and that he "pulled the gun out" because he was wary of an individual who was outside the ATM. Defendant also testified that he only put the gun away after the victim gave him the first $100 because he no longer saw the individual outside the bank.

Even if defendant was armed with a toy gun, as he claims, no rational basis existed to charge the jury on second-degree robbery. The victim indisputably saw a gun, toy or not, and thus reasonably believed it was a deadly weapon. The court properly refused to charge second-degree robbery. Defendant's further claim that the court erred by not charging theft is without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

### V. Certain Persons Jury Charge.

After the jury returned a verdict convicting defendant of robbery, possession of a firearm for an unlawful purpose, and unlawful possession of a weapon, a separate trial before the same jury for the certain persons offenses

took place. Defendant argues for the first time on appeal, after raising no objection to the jury charge at the certain persons trial, that the court erred in not re-instructing the jury on: (1) the nature of the indictment; (2) the function of the court; (3) the duty to avoid speculation and conjecture; (4) the evidence allowed to be considered; (5) the process for deliberating and returning a verdict; (6) the jury's fact-finding function and role in judging the credibility of witnesses; and (7) in light of defendant's decision not to testify, that he had the right to remain silent and was presumed innocent.

Consistent with our Supreme Court's clear instructions in State v. Ragland, 105 N.J. 189, 194-96 (1986), the court properly instructed the jury:

> You must again disregard completely your prior verdict and consider anew the evidence previously admitted on the possession of a weapon by the defendant. The defendant again is entitled to the presumption of innocence. Each and every material fact that makes up the crime of certain persons not to have a firearm and the crime of certain persons not to have a weapon[,] including the element of possession[,] must be proven by the State beyond a reasonable doubt.

The court then instructed the jury on the law regarding possession of a firearm and a weapon by a previously convicted person, and the elements the State must prove in order to find defendant guilty of those crimes beyond a reasonable doubt.

Absent objection from the defendant, no further charge was required.

## VI.   Cumulative Effect of Errors.

Given the lack of significant error and overwhelming evidence of guilt, this issue requires no further discussion.  R. 2:11-3(e)(2).

## VII. Sentencing.

We "review the court's 'sentencing determination under a deferential standard of review.'"  State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)).  We must affirm the trial sentence if: (1) the court followed the sentencing guidelines; (2) its findings of fact and application of aggravating and mitigating factors were based on competent, credible evidence in the record; and (3) the application of the law to the facts does not "shock[] the judicial conscience."  State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"To provide an intelligible record for review, the court should identify the aggravating and mitigating factors, describe the balance of those factors, and explain how it determined defendant's sentence."  State v. Kruse, 105 N.J. 354, 360 (1987).  "Merely enumerating those factors does not provide any insight into the sentencing decision, which follows not from a quantitative, but from a qualitative, analysis."  Id. at 363.

26

## A. Double-counting.

At sentencing, the State moved for imposition of a discretionary extended term of imprisonment based on defendant's prior convictions.

N.J.S.A. 2C:44-3(a) provides:

> The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds . . . [t]he defendant has been convicted of a crime of the first, second or third degree and is a persistent offender.

The same statute defines a "persistent offender" as

> a person who at the time of the commission of the crime is [twenty-one] years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within [ten] years of the date of the crime for which the defendant is being sentenced.

In determining whether to impose a discretionary extended term, the court must: (1) determine whether the minimum statutory predicates are met; (2) decide whether to impose an extended term; (3) weigh aggravating and mitigating factors to determine the base term of the extended sentence; and (4) determine whether to impose a parole ineligibility period. State v. Pierce, 188 N.J. 155, 164 (2006). The court must also consider the need for public

27

protection. Ibid. Further, "other aspects of the defendant's record, which are not among the minimal conditions for determining persistent offender status, such as a juvenile record, parole or probation records, and overall response to prior attempts at rehabilitation, will be relevant factors in adjusting the base extended term." State v. Dunbar, 108 N.J. 80, 92 (1987).

At sentencing, the court determined that an extended prison term should be imposed based on defendant's multiple indictable and criminal convictions, and his possession of a weapon. The court discussed defendant's extensive prior criminal record. The court determined that defendant had "at least nine prior indictable convictions . . . from 1991 to 2010."

The court next explained that defendant "has been on parole, or probation, or in prison, for over 20 years and has multiple violations of probation and parole, has committed crimes while on probation and, frankly, although he may be a different man today, seems to have no respect for the law." The court found aggravating factor three applicable, N.J.S.A. 2C:44-1(a)(3), the risk that the defendant will commit another offense, explaining "it's clear from the defendant's many convictions and violations of probation and parole, that he's a risk to re-offend, not to mention his struggle with addiction that makes him a risk to offend, as well." The court additionally found applicable aggravating

factor six, N.J.S.A. 2C:44-1(a)(6), the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted, citing defendant's long criminal history. Finally, the court found applicable aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), the need for deterring defendant and others from violating the law.

Defendant argues that the court double-counted his extensive criminal record by imposing an extended term and finding aggravating factor six applicable. In State v. Vasquez, 374 N.J. Super. 252, 267 (App. Div. 2005), the sentencing judge erroneously relied upon a single prior conviction to justify both the imposition of an extended term sentence, and the length of that extended term. We found that doing so amounted to "double-counting" of the defendant's prior conviction. Id. at 267-68. State v. McDuffie, 450 N.J. Super. 554, 576 (App. Div. 2017) recently addressed this situation, where a defendant argued that a trial judge "impermissibly double-counted his criminal record, when granting the State's motion for a discretionary extended term, and again, when imposing aggravating factor six . . . ."

> "[F]acts that establish[] elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence." [Defendant's] criminal history was not a "fact" that was a necessary element of an offense for which he was being sentenced. Further, it cannot be

disputed [defendant] had more than the requisite number of offenses to qualify for an extended term. Indeed, the trial judge was not then required to ignore the extent of his criminal history when considering applicable aggravating factors.

[Id. at 576-77 (first and second alterations in original) (citation omitted) (quoting State v. Kromphold, 162 N.J. 345, 353 (2000)).]

Given defendant's numerous prior convictions, the court did not commit error by imposing an extended term and using his prior convictions also as an aggravating factor. Nor did the court err in finding aggravating factor nine, the need for deterrence.

### B. Fines.

Defendant argues that the court erred in imposing two $30 fines pursuant to N.J.S.A. 2C:43-3.3, which provides that penalties be deposited into a "Law Enforcement Officers Training and Equipment Fund." He argues that the statute requires only one $30 penalty per disposition, and here there was only one disposition.

"In addition to any disposition made pursuant to the provisions of Title 2C . . . any person convicted of a crime shall be assessed a penalty of $30." N.J.S.A. 2C:43-3.3(a) (emphasis added). A "disposition" is defined as "[a] final settlement or determination." Black's Law Dictionary 539 (9th ed. 2009).

Defendant had two trials. He was sentenced for his conviction under Indictment No. 15-10-0645 for robbery and unlawful possession of a weapon. Defendant was thereafter sentenced, with a separate judgement of conviction, for the charges under Indictment No. 12-06-0516, two counts of certain persons not to have weapons. The court did not err in assessing two $30 penalties pursuant to N.J.S.A. 2C:43-3.3.

### C. Consecutive terms.

Defendant argues persuasively that the court erred by failing to address the Yarbough factors in sentencing defendant to consecutive sentences. See State v. Yarbough, 100 N.J. 627, 643-44 (1985). N.J.S.A. 2C:44-5(a) provides that when a defendant receives multiple sentences "for more than one offense . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence . . . ." Our Supreme Court set forth five factors that courts should consider in deciding whether to impose consecutive sentences:

> (a) the crimes and their objectives were predominantly independent of each other; (b) the crimes involved separate acts of violence or threats of violence; (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior; (d) any of the crimes involved multiple

A-4916-15T1

> victims; and (e) the convictions for which the sentences are to be imposed are numerous.
>
> [Yarbough, 100 N.J. at 643-44.]

"The Court also specifically directed that 'the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision.'" State v. Miller, 205 N.J. 109, 129 (2011) (quoting Yarbough, 100 N.J. at 643). Where a court does not explain its reasoning for imposition of consecutive sentences, "a remand is ordinarily needed for the judge to place reasons on the record." Ibid.

Under the robbery indictment, on count one, first-degree robbery, the court sentenced defendant to a prison term of thirty years under NERA. On the certain persons indictment, count one, defendant was sentenced to a consecutive term of ten years imprisonment with five years of parole ineligibility.

In sentencing defendant to consecutive sentences, the court explained, "I do find that a consecutive sentence, meaning the certain persons, is appropriate due to [defendant's] lengthy, substantive criminal history and for the protection of the public." A remand is necessary because the court failed to address any of the Yarbough factors. We note that the robbery and certain person offenses were not entirely independent of each other, and involved no more than one victim.

Both the State and defendant agree that we should remand to determine whether defendant is entitled to an additional day of jail credit. Also, both the State and defendant agree defendant's conviction of certain persons not to have a weapon, N.J.S.A. 2C:39-7(a) (count two), a fourth-degree crime, should merge with certain persons not to have a firearm, N.J.S.A. 2C:39-7(b) (count one), a second-degree crime.

We thus remand for a new sentencing hearing, to allow the parties to fully address the sentencing issues. We affirm the convictions and do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION